May it please the Court, Scott Zimmerman for the Appellant, N.B. Industries. The issue on appeal is whether the advertisements attached to the complaint were, or the faxes were advertisements. They are because all this case boils down to, in a way, is that there's a prize that's wrapped up in an advertisement. For example, if Best Buy sent out a flyer saying the first 50 people who come to the store will win a prize, they do that for goodwill, brand recognition, and also to try to get people in the store. No one, I think, there's a consensus that that's an advertisement. Here, the faxes attached are really not materially different than that sort of flyer that I think people would recognize as an ad. But it seems to me, Mr. Zimmerman, you are adding some facts in your analogy. What is the commercial transaction here that's being solicited by this piece of paper? Right. What is being ---- The Best Buy, for example, of course, it's come into the store and buy merchandise. But there's nothing like that here. Within the Four Corners, for example, you have the website. They beckon people to come visit the website. And if you go to the website, that's nothing but an ad. People can go on to the website and in an interactive way sign up and buy all of the services both defendants offer. But is that enough to get you inside the definition of advertisement? I believe so, Your Honor. But we have a lot more than that. They go and say the award part is something special. But the award part is nothing but offering a commercial transaction in and of itself. Remember, the faxes say just for the privilege of applying for the prize, you must transfer to the defendants all of your media and privacy rights. That's property. And they're proposing a commercial transaction in and of itself just for the opportunity to make a prize. That's why I say here it's even more of an ad, because there's an actual commercial transaction being proposed. But what is for sale? What is the good or service that's going to be sold if this is, in fact, an advertisement for a sale? But just let's take a step back. The important thing to recognize is that the Act does not require the fax to have an overt sales pitch. Nothing needs to be for sale. That's an important distinction in the cases that we have cited. You do not have to say we are offering this for this much. It is not that. It covers a lot more territory. Well, what bothers me here is this is an award. Right. That they're advertising here. They're trying to recognize Asian businesses. Right. Now, I'm just speaking for myself, but that seems to me to be a worthy aim. There are programs in many communities in which they want to recognize. Businesses come together to recognize a young, promising woman business leader. Absolutely. And they send faxes out. Make your nominations. What's the difference between that and this? It's got their names on it. These are sponsors. Well, you know. Is that commercial? But, look, let's sort of step back because it's a little bit more dressed up than my Best Buy example. Yeah. I understand that. The question is whether or not that's material. It has a nicer set of, you know, it's a little bit more dressed up. But, look, really what, for example, the bank's trying to say here, they say in the fax we honor Asian community. Look, Wells Fargo has a whole program for Asian business services. This is just a part of it. What they're trying to do by offering the prize and promoting the prize is to say to the Asian community, we understand, we cater to you, if you give us your business, we will treat you well because that's what we do. And understand, the prize is given to the targeted audience of who the customer needs to be. And so I think in that, that's really the one of the sales pitches that's going on. If you give us your business, you'll do well. What is the business? Your client is in what business? He's a defense contractor. And that's the point to be made. It's not in my pleadings, but he received a fax. He's not eligible for the prize. He is eligible to become a bank customer. He is eligible to participate in the conferences that are mentioned on each of the pages of the fax. So, but understand, there's a couple things going on. I talk a lot in my brief about the four corners. And I say why within the four corners the faxes are at. But also understand, there's allegations outside the four corners. There is no case cited by the defendants where a motion to dismiss was granted, where the plaintiff made allegations outside of the four corners. The Amerigard case, no allegations outside the four corners. Phillips-Randolph, no allegations outside the four corners. Lutz, no allegations outside the four corner. What we have here is allegations made outside of the four corners. Which are what? Which are that the faxes were part and parcel of a broader advertising campaign, part of the Asian business services campaign, that the ads were the purpose and motives were for an advertisement. They didn't send this once. They sent it four times. They didn't fax one page. They faxed four pages. One of them was five pages. And they sent them to persons who could not, were not eligible. They faxed off a third-party list in part. So indiscriminately, they really weren't interested. I think that shows they weren't necessarily interested in people applying for the ad. I think that shows that, or the prize, excuse me, that shows that it was an advertisement. Look, they did not just send it to the people who were eligible. But it was an advertisement that was supposedly directed at Asian businesses. So if they sent it to non-Asian businesses, they just made a mistake. No, because I think why they did that, because they used third-party lists. Third-party list is give me numbers of everybody who's defense. Right. It wasn't who they were targeting. Give me numbers of defense contractors. Right. But I'm not understanding why that makes it more of an advertisement. Because they sent the faxes to people who could not even apply for the award. And who couldn't use the Asian business services either or wouldn't. But could become members of the bank customers because, hey, Wells Fargo is a pretty good company. They're giving out this award. And also, as a defense contractor, the conferences that USPAC, if I can use that abbreviation, puts on, it's really directed for that sort of business. Isn't Wells Fargo pretty incidental? Except for the logo, there's not much of a pitch about Wells Fargo, is there? The other thing is there's no way to dissect and parse the facts. The only way that in the law that provides for parsing of the facts is under the newsletter exception. And this is not a newsletter. I think everybody recognizes it's not a newsletter. Even if you went to go to that exception, you still have the issue of what was the principal purpose, even under that exception. And that's inherently a factual issue, if I can submit. Well, you've sued the Pan-Asian American Chamber of Commerce as well. Correct. Which is doing this program in conjunction with Wells Fargo, is that right? Correct. In fact, it's a nonprofit. We allege it's a joint venture. The joint venture part, don't forget, as well as Fargo, that is for profit. And the Act does not exempt nonprofits. And you want to represent a class that consists of everybody who got one of these faxes? Correct. Who were sent at least one of these faxes. Whether they were Asian or not, whether they were eligible or not. Because they don't comply with the other parts of law, and there's really no great dispute that the other parts of law weren't complied with. Okay. I think if you want to save any time. Yes, I would. Thank you very much. Thank you. Mr. Kim. Good morning, and may it please the Court. Excuse me. My name is Randy Kim, and I represent the Wells Fargo defendants. By agreement with the United States Pan-Asian American Chamber of Commerce, unless the panel has specific questions for us PAC, I'll be presenting on behalf of all defendants this morning. I know better than to repeat everything in the brief. I know the panel's read our brief. I do want to address a few points that I think could use further presentation. First, I think to Mr. Zimmerman's point about the best buy ad, my view is that that falls into this category of sort of free goods or services cases. The FCC guidelines talk about that. The difference is. No, he didn't mention guidelines or the notion of Chevron deference or anything like that. I gather he's relying simply on the notion that there's no ambiguity here, and this is clearly an advertisement. So he doesn't get to Chevron deference or get to guidelines. What's your analysis? I agree that the Court doesn't need to get to the FCC guidelines to decide this case. I think, as Judge Buehler found, it's very clearly simply an application for an award, and under the plain language of the statute, which I'll. It's not only an application for an award. I mean, it does have and has logos. It has this Together We'll Go Far, several times and rather large, and it has somewhat great – it has – at one point it has the websites with regard to contact for more information, but later on it has just visit the websites. And I guess – I mean, I gather you would agree the websites themselves contain advertisements. I would agree with that, Judge Berzon. Okay. So why isn't this like, you know, sort of like the free seminar cases that say, you know, come to our free seminar, but at the free seminar there's going to be ads? This is saying visitwellsfargo.biz.asian, and that's – that is an ad. So does it come down to – suppose the whole ad was Visit Wells Fargo. The whole piece of paper was visitwellsfargo.com.biz.asian. Would that be an advertisement? I think that's a more difficult question. Some of the cases cited by the appellant, you know, use the Nike swoosh logo as an example. The what? I'm sorry? Well, I'm not even talking about the logo. Suppose it said visit this website and the website was an ad, clearly an ad. I think that the difference between what we have here and your example, Judge Berzon, and the sort of free seminar cases, there are kind of two. One is here there's no legitimate claim that this is – that this award is pretextual, that it's not legitimate, that it is some sham to get people to visit the website. I understand that, but I was trying to be more specific about the part of the document that does, without connection, as I understand it, to the application, ask people to visit their website, which is an ad. So I was trying to be clear about whether that itself is an ad, and if so, whether the reason the whole thing isn't an ad is because that's just incidental, it's not sufficiently major in the document, or what? That is our position. The lower court found that the logo and slogan and website material was, in her words, modest. The cases support that type of analysis. There are cases that say, you know, if one-seventh of a fax is advertising, that's not enough. There are cases that say 30 to 50 percent were advertising, that is enough. And I think going again to the FCC guidelines, I think what they show is that some amount of advertising does not make a fax an impermissible advertisement. You do have to look at the overall nature of the fax. And here, it's our position that if you look at the logos in comparison to the application materials, it is a very, very tiny percentage. Our estimate is less than 10 percent. What's your best case on the fax not being an advertisement at all? Amerigard? Amerigard, Your Honor, and Phillips-Randolph, both involved, you know, notifications of a potential benefit for qualified recipients, participation in a medical study, participation in a small business focus group. I think the Lutz case supports this as well, that was an employment solicitation. And then a more recent case that we cite in our brief, the Phillip Long Dang case from Georgia, it involved a fax regarding free seminars about the defendant's medical billing services and included things like, meet with our representatives, and the Court found there that it wasn't an unsolicited advertisement. What about cases like Sadowski and Holtzman? Well, Holtzman, and really this is true of all of Appellant's cases, and this is one of the points I wanted to make. I think what distinguishes what I'll call true junk fax cases, the cases relied upon by Mr. Zimmerman, and the situation here, and this goes to some of the questions from the panel earlier, is the TCPA requires that there be some, to use its words, property goods or services being, whose commercial availability or quality is being promoted. And, you know, in other words, there has to be some identifiable product, if you will, that's being advertised. And in all of those cases, including Sadowski and Holtzman, it's crystal clear from the face of the faxes what product, again, if you will, is being advertised. And they just, if Wells Fargo just faxed a, its logo and its, you know, its, you know, its carriage with its slogan and visit our website on one piece of paper, there wouldn't be any identified product, but it would surely be an ad. I agree, Your Honor. I think that, I mean, I think you are, it's certainly advertising its brand and exclusively. And besides which, everybody knows what Wells Fargo is, so it's advertising its banking products. Right. Right. But I think, I mean, I haven't seen a case like that. In all the cases I've seen, it's very obvious, right? Medical, diabetic supplies in the Geisman case, legal services in the Holtzman case, you know, a defendant's stock in the Strojnick case. The reason you probably haven't seen a case like that is because those are obvious cases. I mean, when you see an ad, if you see a billboard and it says Wells Fargo with and Together We'll Go Far, and it says nothing else, everybody knows that's an advertisement. I agree on a sort of human nature level. That's my gut reaction as well. But I'm not sure that such an ad would meet the definition of an unsolicited fax under the TCPA. That's sort of a useless statute, isn't it? If that's not an advertisement, it's a useless statute, because that's how most ads are. I mean, if you look on TV, most ads don't necessarily say, buy this. They say, you know, we're a good company. Sure, sure. I mean, obviously, I think that if Congress or the FCC found that companies were evading the prohibitions on junk faxes, they could certainly, you know, legislate appropriately to address that type of thing. But, again, that's not what we have here. We have a fax that is, you know, 80 to 90 percent, what I would say is not advertising and happens to have, whether you call it de minimis, which is a phrase the FCC uses, or incidental advertising, it doesn't convert the entire fax into an ad. Do you think it's significant here that this is done in cooperation with a nonprofit organization? I do, Your Honor. And actually, I think it's interesting. If you look at the FCC guidelines, they use as an example of what wouldn't be an unsolicited advertisement, a nonprofit sending out a flyer promoting its annual luncheon, for example, and, you know, seeking contributions in exchange for a seat at the luncheon. Who originated the fax? Did it come from the bank or from the nonprofit? Where did it come from? It came from the nonprofit, Your Honor. But, I mean, another way to read this thing is being at least in part being an ad for their conference, right? Isn't that part of their argument? I don't know why. I mean, isn't it true that they were also holding a conference and that this applicant this prize was being given out at the conference? That is part of their argument. But that those two things are faxed at the hall, fax, A-F-A-C-T-S, fax, yes. The award would be presented at the conference if the award winner chose to attend the conference. That's correct, Your Honor. In other words, the award winners could apply, and this goes back to the free goods or seminars cases, you can apply without subjecting yourself to advertising. You don't have to click on the website. You don't have to go to the conference. You can just send it in and be done with it. Unlike the sort of pretextual free goods or seminars cases. Are there any further questions? Thank you. Thank you. If I may quickly, I'm not running away from the FCC regulations. I think to the extent of anything they apply, they favor our side. The newsletter exception says the final issue has to be the primary purpose. That's a factual question. But all of the cases that they rely on for this issue of incidental, they're all newsletter cases. All of them. And all of the ones they rely on are summary judgment cases. The leading case in the newsletter area on pleadings is Holtzman. And Holtzman says it's a factual question. I'm going to overrule the motion to dismiss. That's the leading case in that area about de minimis or not. The free services. Well, we have the document in the record, don't we? I'm sorry. We have the document in the record, don't we? Which document? The facts. The facts? Sure. I mean, technically, there's more here than just the allegations of the court. Right. Because the newsletter exception, you have to see, was it a regular schedule, who the recipients were, and all those things. The free seminar regulation, there's two parts to it. One is the pretext part. And I don't know what happened at the award ceremony. I'm anxious to find out. But also there's another part about it being part of an overall marketing campaign. And also further, I want to say that this is not free, because in order to apply, you have to give up your rights. It's not free. The website, if I can read it. Your time has expired. We have that. Thank you. I appreciate the time the Court has provided. Do you have any further questions? Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Berzon